2015 Ark. App. 246

**Clint BEASON, Appellant**

v.

**Mona PARKS, Appellee**

No. CV–14–502

Court of Appeals of Arkansas,
DIVISIONS II, III & IV.

Opinion Delivered April 15, 2015

Kris M. Boyd and J.P. Longacre, for appellant.

Maddox & Maddox, by: John D. Maddox II, Mena, for appellee.

CLIFF HOOFMAN, Judge

Appellant Clint Beason appeals from the circuit court's order granting appellee Mona Parks's petition for an order of protection. Beason argues on appeal that the circuit court erred by denying his motion to dismiss the petition based on (1) a lack of personal jurisdiction and (2) the failure to file a verified petition as required by statute. We reverse and dismiss based on Beason's second point on appeal.

On November 14, 2013, Parks filed a petition for an order of protection in Polk County, Arkansas, against Beason, who was her boyfriend, alleging that he had thrown her down, kicked her, pulled her around by her hair, and choked her. She listed the date of the offense as November 10, 2013. Parks further alleged that Beason had threatened to kill her, her family, and her pets if she told anyone what he had done. She indicated in her petition that she lived in Wickes, Arkansas, and that Beason lived in Idabel, Oklahoma. Parks also attached an affidavit to her petition, specifically describing the incident on November 10 at his home when he physically assaulted her.

The circuit court granted an ex-parte temporary order of protection that was to remain in effect until the date of the hearing on Parks's petition, set for December 4, 2013. On December 4, Beason filed a special entry of appearance and a motion to dismiss the petition, alleging that venue was proper in Oklahoma and that the court lacked personal jurisdiction over him. At the December 4 hearing, Parks testified that she was a resident of Polk County, Arkansas, and that Beason was a resident of Oklahoma. She stated that some, but not all, of the acts alleged in her petition had occurred in Oklahoma. Parks argued that the order-of-protection statute authorized her to file her petition either where she resided or where the respondent resided, and Beason asserted that this statute related only to venue, not jurisdiction. The circuit court asked the parties to submit authority on the issue of jurisdiction and scheduled another hearing for February 5, 2014. On December 17, 2013, the court extended the ex-parte order of protection until February 5.

At the beginning of the February 5 hearing, Beason argued that it was an inconvenience and a burden on him to drive an hour and a half to Arkansas to defend the petition, when all of the acts had occurred in Oklahoma and the witnesses resided there. He therefore re-

quested that the circuit court grant his motion to dismiss based on a lack of personal jurisdiction. The court denied the motion, finding that the clear language of Arkansas Code Annotated section 9–15–201(b) allowed the petition to be filed in the county where the petitioner resides, where the incident occurred, or where the respondent may be served. However, the court noted that if the evidence presented at the hearing revealed that ⌊₃all of the acts occurred in Oklahoma, it might reconsider its decision.

Parks testified that, in addition to the November 10, 2013 incident that occurred when she was visiting Beason in Oklahoma, he had phoned her residence in Arkansas in June 2013 and had threatened to kill her family and her pets. She further testified that Beason had called her on December 14, 2013, asking her to come visit and threatening to injure himself if she did not. Parks heard a gunshot over the phone and called for medical assistance. Beason was taken to the hospital with a self-inflicted gunshot wound, and he was then released to a behavioral hospital. Parks stated that Beason had continued to contact her son, and she testified that she was scared of Beason and wished to have the order of protection extended.

At the conclusion of Parks's direct examination, Beason renewed his motion to dismiss on the basis that Parks's petition was not accompanied by an affidavit made under oath as is required under Arkansas Code Annotated section 9–15–201(e)(2). The circuit court denied the motion, finding that Parks's petition itself was verified under oath and that this was sufficient to comply with the statute.

On cross-examination, Parks testified that she had visited Beason in Oklahoma on multiple occasions between June and November 2013. She stated that she had gone to the McCurtain County Police Department and had filed a report regarding the November 2013 incident. However, she did not file for a protective order in Oklahoma because she was informed that she needed to file that in the county where she resided.

Based on the evidence presented at the hearing, the circuit court found that there were grounds for entering an order of protection and that the order would remain in effect for a ⌊₄period of three years. The circuit court filed the protective order on February 12, 2014, and Beason filed a timely notice of appeal.

■■■ In Beason's first point on appeal, he argues that the circuit court erred by denying his motion to dismiss the petition because the court lacked personal jurisdiction over him. When reviewing a trial court's decision on a motion to dismiss due to lack of jurisdiction, we treat the facts alleged in the complaint as true and view them in the light most favorable to the plaintiff. *CDI Contractors, Inc. v. Goff Steel Erectors, Inc.*, 301 Ark. 311, 783 S.W.2d 846 (1990).

■■■ Under our long-arm statute, Arkansas courts may assert in personam jurisdiction over a nonresident party to the maximum extent permitted by the Due Process Clause of the Fourteenth Amendment of the United States Constitution. Ark. Code Ann. § 16–4–101(B) (Repl. 2010); *Yanmar Co., Ltd. v. Slater*, 2012 Ark. 36, 386 S.W.3d 439. Thus, the exercise of personal jurisdiction is limited only by federal constitutional law. *Gibbs v. PrimeLending*, 2011 Ark. 255, 381 S.W.3d 829.

■■■ The Supreme Court has held that in order for in personam jurisdiction to apply to a defendant not physically present in the state, due process requires certain minimum contacts with the forum state such that the state court's exercise of

jurisdiction would not offend traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Yanmar, supra.* We have used a five-factor test to determine the sufficiency of a defendant's contacts with this state: (1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; |₅(4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties. *John Norrell Arms, Inc. v. Higgins,* 332 Ark. 24, 962 S.W.2d 801 (1998).

The statute governing petitions for orders of protection, Arkansas Code Annotated section 9–15–201(b), states that the petition "shall be filed in the county where the petitioner resides, where the alleged incident of abuse occurred, or where the respondent may be served." Beason argues that this statute should not be interpreted as giving a circuit court "carte blanche" to hale a nonresident defendant into court in this state regardless of his contacts with the state, as this would lead to "absurd, unconstitutional results." Under the circumstances in this case, Beason contends that he did not have sufficient minimum contacts with Arkansas, given that he resided in Oklahoma and the facts giving rise to the petition occurred in Oklahoma. He argues that the circuit court's exercise of personal jurisdiction in this case was not consistent with traditional notions of fair play and substantial justice and that it violated his due-process rights.

As Parks asserts in her brief, there are no Arkansas cases that are directly on point with the situation here, where an Arkansas resident is attempting to obtain an order of protection against a nonresident based on facts that primarily occurred outside the state. However, Parks cites to cases from other jurisdictions hold-ing that, even if minimum contacts with the state do not exist, personal *jurisdiction* over a nonresident defendant is not required for a trial court to enter a protective order against that defendant, as long as the order of protection does not require affirmative action by the defendant. *See, e.g., Ball v. Ball,* 810 N.W.2d 25 (Iowa App.2011); *Hemenway v. Hemenway,* 159 N.H. 680, 992 A.2d 575 (2010); *Caplan v. Donovan,* 879 N.E.2d |₆117 (Mass. 2008); *Shah v. Shah,* 184 N.J. 125, 875 A.2d 931 (2005). The court in *Shah* discussed this distinction between prohibitory and affirmative orders as follows:

[P]rohibitory orders ... serve to protect the domestic violence victim, and affirmative orders ... require that a defendant undertake an action. That distinction is rooted in two separate concepts. The former, which allows the entry of an order prohibiting acts of domestic violence against a defendant over whom no personal jurisdiction exists, is addressed not to the defendant but to the victim: it provides the victim the very protection the law specifically allows, and it prohibits the defendant from engaging in behavior already specifically outlawed. Because the issuance of a prohibitory order does not implicate any of defendant's substantive rights, the trial court had jurisdiction to enter a temporary restraining order to the extent it prohibited certain actions by defendant in New Jersey.

*Shah,* 875 A.2d at 939. The court noted that a different result would have been obtained if the trial court had attempted to exercise its coercive power to compel action by the defendant over whom it lacked personal jurisdiction. *Id.*

The protective order in this case only prohibits Beason from contacting Parks and does not impose any sort of affirmative duty upon him. Thus, even if Beason

is correct that sufficient minimum contacts did not exist here, we agree with the reasoning set forth in *Shah, supra,* and hold that the circuit court did not err by denying his motion to dismiss based on a lack of personal jurisdiction.

■ In his second point on appeal, Beason argues that Parks's petition for an order of protection was statutorily deficient. Arkansas Code Annotated section 9–15–201 establishes the requirements for a petition for an order of protection and is set forth below in its entirety:

(a) All petitions under this chapter shall be verified.

(b) The petition shall be filed in the county where the petitioner resides, where the alleged incident of abuse occurred, or where the respondent may be served.

(c)(1) A petition for relief under this chapter may be filed in the circuit court.

(2) A petition for relief under this chapter may be filed in a pilot district court if the jurisdiction is established by the Supreme Court under Arkansas Constitution, Amendment 80, § 7 and if the cases are assigned to the pilot district court through the Court Administrative Plan under the Arkansas Supreme Court Administrative Order No. 14.

(d) A petition may be filed by:

(1) Any adult family or household member on behalf of himself or herself;

(2) Any adult family or household member on behalf of another family or household member who is a minor, including a married minor;

(3) Any adult family or household member on behalf of another family or household member who has been adjudicated an incompetent; or

(4) An employee or volunteer of a domestic-violence shelter or program on behalf of a minor, including a married minor.

(e)(1) A petition for relief shall:

(A) Allege the existence of domestic abuse;

(B) Disclose the existence of any pending litigation between the parties; and

(C) Disclose any prior filings of a petition for an order of protection under this chapter.

(2) The petition shall be accompanied by an affidavit made under oath that states the specific facts and circumstances of the domestic abuse and the specific relief sought.

(f) The petition may be filed regardless of whether there is any pending litigation between the parties.

(g) A person's right to file a petition, or obtain relief hereunder shall not be affected by his or her leaving the residence or household to avoid abuse.

In Arkansas Code Annotated section 9–15–203 (Repl. 2009), the legislature has also set forth a model form for a petition for an order of protection that may be utilized, and Parks's petition was identical to this form.

■ Beason contends that Parks's petition was deficient because, while it was verified, the handwritten statement of facts that was attached was not made under oath as required by Arkansas Code Annotated section 9–15–201(e)(2). The primary rule of statutory construction is to give effect to the intent of the legislature. *Snowden v. JRE Invs., Inc.,* 2010 Ark. 276, 370 S.W.3d 215. We first construe the statute just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id.* When the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need to resort to rules of statutory interpretation. *Id.* Is-

sues of statutory construction are questions of law and are reviewed de novo on appeal. *Evans v. Hamby,* 2011 Ark. 69, 378 S.W.3d 723. We are not bound by the circuit court's interpretation of a statute; however, in the absence of a showing that the circuit court erred in its interpretation, that interpretation will be accepted as correct on appeal. *Id.*

The circuit court in this case found that Parks was not required to have her affidavit notarized because the petition itself, to which the affidavit was attached, was verified. However, as Beason argues, the statute requires both that the petition itself be verified and that the affidavit be made under oath. Ark. Code Ann. § 9–15–201(a) & (e)(2). The statute also uses the words "shall," indicating that such compliance is mandatory. *Id.* Thus, under the plain language of the statute, Parks's petition was deficient. As Beason contends, if the legislature had intended for the verification of the petition to be sufficient by itself, then there would have been no need to include subsection (e)(2), requiring that there be an accompanying affidavit made under oath. This interpretation of the statute would be contrary to our rule that we construe statutory language such that no word is left void, superfluous, or insignificant and that we give meaning to every word in the statute if possible. *Bedell v. Williams,* 2012 Ark. 75, 386 S.W.3d 493.

In her brief, Parks responds by arguing that this court should not exalt form over substance and asserts that her verified petition and her affidavit should be considered as one document that satisfies both subsections (a) and (e)(2) of the statute. She also cites to cases involving petitions for contempt and contends that such petitions are not fatally deficient if not made under oath, where the petitioner appears in open court and the respondent has the opportunity to hear the evidence and defend himself. *See, e.g., P.J. Transp., Inc. v. First Service Bank,* 2012 Ark. App. 292, 2012 WL 1415916. However, Parks fails to recognize that even the language she quotes from *P.J. Transportation, supra,* notes that "[a]ppellants cite no statute or rule that requires a contempt petition to be verified and accompanied by an affidavit in every situation." *Id.* at 3–4. Here, there is indeed such a statute, and Parks has cited no authority from either our supreme court or this court holding that substantial compliance with this particular statute is sufficient.[1] Thus, Parks's petition failed to comply with the mandatory language in section 9–15–201, and we reverse and dismiss on this basis.

We do not agree with the dissenting opinion that Beason waived the issue of whether Parks's petition complied with the statutory requirements. The issue of waiver was not raised or argued by either party to this action, nor did the circuit court rule on this issue. Furthermore, the cases cited by the dissent regarding waiver are distinguishable.

In *Worley v. River Oaks Water Improvement Dist. No. 48 of Garland County,* 66 Ark. App. 170, 990 S.W.2d 562

---

1. The dissent cites to cases in which this court held that substantial compliance with the statutory requirements for adoption petitions was sufficient. However, we note that the issuance of an order of protection involves other consequences for the respondent that are more punitive in nature, such as the inability to possess a firearm and potential criminal liability. *See* Ark. Code Ann. § 9–15–207

(Repl. 2009). Because we have held that statutory provisions that are punitive in nature must be strictly construed, this is further support for our conclusion that substantial compliance with section 9–15–201 is insufficient. *Forever Green Athletic Fields, Inc. v. Lasiter Constr., Inc.,* 2011 Ark. App. 347, 384 S.W.3d 540.

(1999), the issue was whether the appellee had waived the requirement in Arkansas Code Annotated section 16–67–201 (1987) [2] that a party appealing a decision from county court to circuit court must file an affidavit along with the prayer for appeal. Although the requirement of an appeal affidavit was originally held to be a jurisdictional requirement, our supreme court subsequently held that this requirement could be waived by the opposing party. *Id.* In *Worley,* the appeal had been filed in chancery court instead of circuit court, and the appellee asked for an expedited hearing before the chancery court, then moved to dismiss the appeal, claiming that the chancery court lacked jurisdiction and that the notice of appeal was defective for reasons unrelated to the affidavit. *Id.* The chancery court transferred the case to circuit court. *Id.* The appellee then filed a motion to dismiss in circuit court on the ground that the appellant had failed to file the required affidavit along with her notice of appeal, and the circuit court granted the motion, finding that the affidavit was a jurisdictional requirement. *Id.* This court reversed on appeal, holding that where the appellee had appeared and taken substantive steps in the matter by requesting an expedited hearing and moving to dismiss for unrelated reasons, the appellee had waived the requirement of an affidavit. *Id.*

Not only does the present case involve an entirely different statutorily required affidavit, Beason also did not waive the issue of statutory compliance under the circumstances in this case. Although he initially filed his motion to dismiss solely on the issue of personal jurisdiction, this motion was not ruled on by the circuit court until the second hearing. Beason renewed his motion to dismiss during Parks's testimony at this second hearing and requested that the circuit court also dismiss the petition based on Parks's failure to file a sworn affidavit. Beason had not testified or taken any other substantive steps in the case at the time he renewed his motion to dismiss on this basis. Thus, the holding in *Worley* does not apply to the facts of this case.

The dissent further cites to *Wulff v. Davis,* 108 Ark. 291, 157 S.W. 384 (1913), as support for its finding of waiver; however, *Wulff* is also inapplicable, as the appellant in that case had failed to raise the issue of appellee's failure to file an appeal affidavit until its motion for new trial, after the judgment had already been rendered. The supreme court held that the appellant had waived the statutory defect at that point by appearing and taking substantive steps without moving to dismiss on that ground. *Id.*

Because Beason did not waive the issue of whether Parks's petition complied with Arkansas Code Annotated section 9–15–201, we reverse and dismiss the circuit court's order granting Parks's petition for an order of protection against Beason.

Reversed and dismissed.

Gladwin, C.J., and Virden, Kinard, Whiteaker, and Hixson, JJ., agree.

Gruber, Vaught, and Brown, JJ., dissent.

Larry D. Vaught, Judge, dissenting.

While I agree with the majority's decision that the trial court had personal jurisdiction over Beason, I must dissent because Parks substantially complied with section 9–15–201(e)(2), and Beason waived any statutory irregularity.

---

**2.** This statute has since been superseded by District Court Rule 9. *See Pike Ave. Dev. Co. v. Pulaski Cnty.,* 343 Ark. 338, 37 S.W.3d 177 (2001).

Parks did not strictly comply with section 9–15–201(e)(2). Her petition was not accompanied by an affidavit that she signed under oath. However, Beason fails to cite authority supporting his position that strict compliance with the statute is required. And other than citing to the general law regarding statutory construction and the presence of the word "shall" in section 9–15–201(e)(2), the majority likewise fails to cite authority requiring that this statute be strictly construed.

There is persuasive authority that substantial compliance with domestic-petition statutes is sufficient. In *Reid v. Frazee,* 72 Ark. App. 474, 478, 41 S.W.3d 397, 399–400 (2001), our court held that a petition for adoption that was not signed or verified substantially complied with the statutory requirements where the petitioner testified in court, verifying the allegations in his petition. *See also Ark. Dep't of Human Servs. v. Couch,* 38 Ark. App. 165, 171, 832 S.W.2d 265, 269 (1992) (holding that an adoption petition that failed to include all of the information required under the governing adoption statute was in substantial compliance where the statutory information was introduced by the pleadings and testimony of the parties).

Under the facts of this case, I would hold that Parks substantially complied with section 9–15–201(e)(2). Her petition, which was verified, set forth the jurisdiction of the trial court and included the date and details of the alleged abuse. The affidavit, although not signed by Parks or notarized, described in more detail the same allegations that were included in the petition. Moreover, Parks's sworn testimony at two hearings confirmed the information contained in the unsigned, unsworn affidavit. The evidence further demonstrates that Parks's petition and affidavit provided Beason sufficient notice of the allegations against him as he responded by filing a special entry of appearance and motion to dismiss the petition *for order of protection, and he was represented at both* of the hearings on the petition. Finally, I also note that section 9–15–201(e)(2) does not contain a remedy for the failure to comply with the affidavit provision. Therefore, I would hold that Parks substantially complied with the statute and affirm on this point.

Additionally, I would hold that Beason waived the statutory irregularity of which he complains. Beason did not raise the statutory-deficiency issue at the first hearing on his motion to dismiss for lack of personal jurisdiction. And he did not raise the statutory deficiency at the second hearing until after the trial court had denied his motion to dismiss for lack of personal jurisdiction. Parks testified at both hearings. In light of Beason's failure to raise the issue of the statutory deficiency at the first opportunity and the fact that, by the time Beason raised the issue, Parks had already testified twice to the trial court—curing the deficiencies—I would hold that Beason's complaint about the unsworn affidavit was waived. *Worley v. River Oaks Water Improvement Dist. No. 48 of Garland Cnty.,* 66 Ark. App. 170, 172, 990 S.W.2d 562, 563 (1999) (holding that waiver of a statutory requirement for an affidavit occurs when the opposing party appears and takes substantive steps in the matter without moving to dismiss the cause on that basis). *See also Wulff v. Davis,* 108 Ark. 291, 157 S.W. 384 (1913).

Gruber and Brown, JJ., join.